**United States District Court**

EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | | |
|---|---|---|
| JAMES PHILLIP WALDRON | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No.  4:22cv317 |
| v. | § | |
| | § | Judge Mazzant |
| AT&T, INC. | § | |
| | § | |
| Defendant. | § | |

**COMPLAINT**

COMES NOW Phillip James Waldron, Plaintiff, and alleges as follows:

**INTRODUCTION**

1.      This is an action for declaratory judgment and injunctive relief from a subpoena (the "Subpoena") served upon Defendant AT&T, Inc. ("AT&T"), this action removed from the 471st District Court, Collin County, Texas.  The subpoena was issued by the "Select Committee to Investigate the January 6th Attack on the United States Capitol" (the "Committee") and demands the production of "all subscriber information" in the custody of AT&T concerning Col. Plaintiff James Phillip Waldron's cellular telephone account for the period November 1, 2020, to January 31, 2021.

2.     The "subscriber information" sought by the subpoena includes Col. Waldron's personal contact, account billing, and authorized user information, in addition to connection records such as the times, duration, and recipients of all calls or text messages including Plaintiff's information that Plaintiff is under contract to not disclose and which is privileged and confidential pursuant to contract.

3.     In December, 2020, Plaintiff was retained as a consulting expert to attorney Wm. Charles Bundren ("Bundren"), THE BUNDREN LAW GROUP, to perform services necessary to the performance of professional legal services by Bundren in the representation of clients and in anticipation of litigation.   That contractual relationship lasted continuously through January 31, 2021.

4.     The disclosure of the Plaintiff's account information by AT&T will reveal records of communications relating to Waldron's contractual engagement with Bundren and is prohibited as in violation of the attorney-client privilege and work product doctrine.   Moreover, the subpoena was issued without any legal authority because the Committee failed to comport with the requirements under its authorizing resolution, H. Res. 503, H. Res. 503, 117th Cong. (2021).   Further, the subpoena exceeds the scope of the Congress's power to investigate for a genuine legislative purpose, was issued in violation of the Stored Communications Act, 18 U.S.C. §§ 2702(a)(1), (3) and the Telecommunications Act of 1996, 47 U.S.C. §

222, and violates Col. Waldron's rights under the First and Fourth Amendments of the U.S. Constitution and Article I, §§ 8 and 9 of the Texas Constitution.

5.      Plaintiff seeks a judgment declaring that the subpoena was invalidly issued under its own congressional enabling authorization, violates federal statutes, violates his rights under the First and Fourth Amendments of the U.S. Constitution and Article I, §§ 8 and 9 of the Texas Constitution, and would invade the attorney-client privilege and the sanctity of Bundren's work product. Plaintiff further seeks injunctive relief to prohibit AT&T from complying with such illegal subpoena and disclosing such privileged information.

## PARTIES

6.      Plaintiff James Phillip Waldron is an adult resident of the State of Texas. Plaintiff is a citizen of the State of Texas and the United States.

7.      Defendant AT&T, Inc., is a Delaware corporation with its principal place of business in Dallas, Texas.  CT Corporation System, doing business at 1999 Bryan St., Suite 900, Dallas, TX 75201-3136 is the agent for service of process on Defendant AT&T, which filed a notice of removal to this Court from the 471st District Court, Collin County, Texas, on April 15, 2022 (Doc. 1).

## JURISDICTION AND VENUE

8.      This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of

the United States.  This Court has supplemental jurisdiction over Plaintiff's state law claims because they derive from a common nucleus of operative facts with the federal constitutional and statutory claims alleged herein, such that the state law claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," pursuant to 28 USC § 1367(a).

9.     Venue is properly before this Court under 28 USC § 1391(a)(2), because a substantial part of the events giving rise to this claim occurred in Collin County, Texas.

## STATEMENT OF FACTS

10.     Plaintiff is a consultant retained by attorneys and a law firm with their principal place of business in Collin County, Texas, to assist in investigating matters for clients regarding the November 2020 Presidential election (the "Election"). Plaintiff has been retained by contract with attorneys and law firms residing in Collin County, Texas, and elsewhere to assist in the investigation of matters related to the Election for clients of these attorneys and law firms.

11.     Plaintiff entered into agreements with attorneys and law firms, some residing in Collin County, Texas, to not disclose and to keep confidential all information regarding the investigation being conducted by said attorneys and law firms for their clients concerning the November 2020 Presidential election, which Plaintiff assisted and investigated for said attorneys and law firms (the "Confidential

and Proprietary NDA"). The attorneys and law firm residing in Collin County, Texas, selected Plaintiff to assist them, on behalf of their clients, in investigating the Election with the understanding that Plaintiff would not disclose any information regarding the attorneys, law firms, the clients of the law firm or attorneys, the communications among and between Plaintiff, clients, and the attorneys and law firms, and the work product prepared by the Plaintiff pursuant to these engagements.

12.     The Confidential and Proprietary NDA requires Plaintiff to keep confidential and to not disclose any information regarding any investigation of the Election and to take actions to protect the confidential and proprietary information investigated for the law firms and attorneys regarding the Election for and on behalf of the attorneys and law firm clients.

13.     Plaintiff understood the confidential, proprietary and privileged nature of the investigation in which Plaintiff was retained to assist for clients of the attorneys and law firms, and Plaintiff agreed to keep all information regarding the investigation confidential, proprietary and privileged.  These attorneys and law firms are bound by the attorney-client privilege with their clients for whom Plaintiff agreed to consult on a confidential, proprietary and privileged manner.

14.     Allegedly, on January 6, 2021, a group of protestors in Washington, D.C., entered the United States Capitol, allegedly breached security, and allegedly disrupted the counting of the Electoral College votes until order was restored. The

United States Department of Justice has reportedly arrested and charged more than 725 individuals in connection with the events of January 6th. Plaintiff had no involvement in the events of January 6th.  Nevertheless, a committee of the House of Representatives of the Congress of the United States of America is seeking records from Defendant that contain or would reveal confidential and proprietary information, and infringe upon the attorney-client privileges and attorney work product privileges held by numerous clients of Plaintiff and the attorneys and law firms described above.

15.     On June 28, 2021, U.S. House Speaker Nancy Pelosi introduced House Resolution 503 ("H. Res. 503"), "Establishing the Select Committee to Investigate the January 6th Attack on the United States Capitol."  Two days later, the House passed H. Res. 503.  H. RES. 503, 117th Cong. (2021).

16.     H. Res. 503 instructs the Speaker of the House to "appoint 13 Members to the Select Committee, 5 of whom shall be appointed after consultation with the minority leader," and to designate one Member to serve as chair of the Select Committee.   But the Speaker only appointed nine members to the Select Committee—seven Democrats and two Republicans.  Thus the Select Committee is not an authorized congressional committee because its very composition fails to comport with its own authorizing resolution. See H. Res. 503, Section 2. Speaker

Pelosi appointed and designated Rep. Bennie Thompson (D-MS 2nd Dis.) to serve as Chairman of the Select Committee.

17.     H. Res 503 Section 3 establishes the Select Committee for three purposes:  **(1)** To investigate and report upon the facts, circumstances, and causes relating to the January 6, 2021, domestic terrorist attack upon the United States Capitol Complex (hereafter referred to as the "domestic terrorist attack on the Capitol") and relating to the interference with the peaceful transfer of power, including facts and causes relating to the preparedness and response of the United States Capitol Police and other Federal, State, and local law enforcement agencies in the National Capital Region and other instrumentalities of government, as well as the influencing factors that fomented such an attack on American representative democracy while engaged in a constitutional process;  **(2)** To examine and evaluate evidence developed by relevant Federal, State, and local governmental agencies regarding the facts and circumstances surrounding the domestic terrorist attack on the Capitol and targeted violence and domestic terrorism relevant to such terrorist attack; and **(3)** To build upon the investigations of other entities and avoid unnecessary duplication of efforts by reviewing the investigations, findings, conclusions, and recommendations of other executive branch, congressional, or independent bipartisan or nonpartisan commission investigations into the domestic

terrorist attack on the Capitol, including investigations into influencing factors related to such attack.

18.     H. Res. 503 Section 4 thus establishes three "functions" of the Select Committee: (1) to "investigate the facts, circumstances, and causes relating to the domestic terror attack on the Capitol"; (2) to "identify, review, and evaluate the causes of and the lessons learned from the domestic terrorist attack on the Capitol"; and (3) to "issue a final report to the House containing such findings, conclusions, and recommendations for corrective measures described in subsection (c) as it may deem necessary."

19.     Subsection (c) of Section 4 describes three categories of "corrective measures": "changes in law, policy procedure, rules, or regulations that could be taken" (1) "to prevent future acts of violence, domestic terrorism, and domestic violent extremism, including acts targeted at American democratic institutions"; (2) "to improve the security posture of the United States Capitol Complex while preserving accessibility of the Capitol Complex for all Americans"; and (3) "to strengthen the security and resilience of the United States American democratic institutions against violence, domestic terrorism, and domestic violent extremism."

20.     H. Res. 503 Section 5(c)(4) authorizes the Chair of the Select Committee to "issue subpoenas pursuant to clause 2(m) of Rule XI [subpoena power] in the investigation and study conducted pursuant to sections 3 and 4 of this

resolution," but Res. 503 Subsections (A) & (B) of Section 5(c)(6) limit that authority by requiring consultation with, and notice to, the ranking minority member of the Select Committee prior to issuing a subpoena.  The Chair did not consult with the ranking member prior to issuing the Subpoena on Defendant, because the Select Committee does not have a ranking member.  On November 2, 2021, the General Counsel of the House of Representatives admitted that "there were no majority or ranking members" of the Select Committee.

21.     On February 1, 2022, Chairman Thompson, on behalf of the Select Committee, and without the required consultation and notice to a ranking member, issued a subpoena to Defendant seeking records concerning phone numbers purportedly listed in "Section B, below." (A copy of the Subpoena is attached hereto as Exhibit 1 and incorporated and adopted herein by reference for all purposes).

22.     On February 9, 2022, Defendant wrote Plaintiff to advise that it "ha[d] received a subpoena requiring the production of certain records associated with the phone number referenced above" (identifying the number assigned to Plaintiff) and attaching "[a] copy of the subpoena," but excluding "Section B, which identifies the phone number referenced above."

23.     In other words, nowhere within the copy of the Subpoena provided to Plaintiff is Plaintiff's identity, or any other customer whose records are sought, disclosed.

24.    The Subpoena instructs Defendant to produce subscriber information and cell phone data associated with Plaintiff's personal cell phone. The subscriber information demanded by the Subpoena includes subscriber names and contact information, authorized users, time of service provided, account changes, associated IP addresses, and other metadata. The cell phone data requested could include all calls, text messages, and other records of communications associated with the phone number. These data can be used for historic cell site analysis. The Subpoena seeks all such data from November 1, 2020, through January 31, 2021.

25.    As previously described herein, Plaintiff is a consultant working for attorneys and law firms doing business in Collin County, Texas, and other attorney and law firms (the "Attorneys") who were conducting an investigation of the Election during the time period covered by the Subpoena. Plaintiff used the account associated with the phone number for which the information is sought to communicate with the Attorneys and about the Attorneys' clients, and those communications are protected by, *inter alia*, the attorney-client privilege, the work product doctrine and the Confidential and Proprietary NDA.

<u>**COUNT I**</u>
**Declaratory Relief**
**28 U.S.C. § 2201**
**Subpoena Unlawful—No Valid Legislative Purpose**

26.     Plaintiff repeats, realleges, and incorporates all previous paragraphs herein as if set forth herein.

27.     Congress' broad "power of inquiry—with process to enforce it—is an essential and appropriate auxiliary to the legislative function." *McGrain v. Daugherty*, 273 U.S. 135, 174 (1927). Accordingly, Congress and its duly authorized committees may issue a subpoena where the information sought "is related to, and in furtherance of, a legitimate task of Congress," *Watkins v. United States*, 354 U.S. 178, 187 (1957), and the subpoena serves a "valid legislative purpose." *Quinn v. United States*, 349 U.S. 155, 161 (1955). At the same time, because Congress's subpoena power "is justified as an adjunct to the legislative process, it is subject to several limitations," *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020), limitations which stem directly from the Constitution. *Kilbourn v. Thompson*, 103 U.S. 168, 182-89 (1880).

28.     Specifically, the Constitution permits Congress to enact only certain kinds of legislation, see, e.g., U.S. CONST. art. I, § 8, and while Congress's power to investigate "is justified as an adjunct to the legislative process, it is subject to several limitations." *Mazars,* 140 S. Ct. at 2031. These limitations include that Congress may not issue a subpoena for the purposes of "law enforcement" because "those powers are assigned under our Constitution to the Executive and the Judiciary," *Quinn*, 349 U.S. at 161, or to "try" someone "of any crime or wrongdoing,"

*McGrain*, 273 U.S. at 179; nor does Congress have any "general power to inquire into private affairs and compel disclosure," *id*., at 173-74, or the "power to expose for the sake of exposure," *Watkins*, 354 U.S. at 200. Also importantly, congressional investigations "conducted solely for the personal aggrandizement of the investigators or to 'punish' those investigated are indefensible." *Watkins*, 354 U.S. at 187, *Mazars*, 140 S. Ct. at 2032. Additionally, as the Supreme Court has recognized: "[t]he Bill of Rights s applicable to [congressional] investigations as to all forms of government action," and the Select Committee may not "abridge[]. . . the First Amendment freedoms of speech, press, religion, or political belief and association" in the name of advancing its investigation. *Watkins*, 354 U.S. at 188. *See also, United States v. Rumely*, 345 U.S. 41, 46-47 (1953).

29.     Thus, to ensure that a Congressional inquiry meets a "valid legislative purpose," an inquiring committee must define "with the same degree of explicitness and clarity that the Due Process Clause requires in the expression of any element of a criminal offense" its "jurisdictional pertinency" so as to avoid the "vice for vagueness." *Watkins,* 354 U.S. at 206-09. See also id. at 206 ("When the definition of jurisdictional pertinency is as uncertain and wavering as in the case of the Un-American Activities Committee, it becomes extremely difficult for the Committee to limit its inquiries to statutory pertinency").

30.    The Committee has not, and cannot, demonstrate a "valid legislative purpose" justifying its need for a subpoena of private citizen data—the subscriber information as well as connection records and records of session times and durations—especially for a citizen who was not involved with and did not in any way participate in the "attack on the Capitol" on January 6.  Consequently, the Committee cannot establish sufficient jurisdictional pertinence justifying the breadth of the Subpoena's demand for private citizen data pertaining to Plaintiff.

31.    The Committee has attempted to expand its jurisdiction and the scope of its investigation far beyond the specific confines of H. Res. 503.  In fact, House General Counsel Douglas Letter admitted this in a hearing, indicating that the Select Committee was instead going to investigate the investigators of election fraud, apparently on the unsupported theory that legal work to uncover fraud and expressions of concern that the 2020 Election was affected by fraud—expressions fully protected by the First Amendment—somehow "brought about" the riotous activity of a subset of demonstrators on January 6:

> [W]e need to figure out what was the atmosphere that brought . . . about [the events of January 6, including] the many attempts that were made before the election to try to build the nature of mistrust about the election itself, which goes to undermine our democracy, so that if President Trump did lose he would be able to say that his is unfair and to generate lots of anger and rage that led to January 6.[1]

---

[1]  *See* Hrg T., Trump v. Thompson, No. 21-cv-002769 (Nov. 4, 2021).

32.     The Committee itself has disavowed any intention to confine itself to the specific limitations of H. Res. 503.   In one recent press release the Committee stated directly its view that "attempts to promote unsupported claims of election fraud" were among the "causes that contributed to the violence on January 6."   The Chairman has gone so far as to label as criminal the mere recommendation of "a process by which elections could be manipulated in various states," apparently referring to any proposals to invalidate electors chosen from questioned voting results.   The Chairman claimed that a witness simply advancing a "recommendation that led states to believe they could overturn" the 2020 election results would have thereby "contributed to the January 6 insurrection."

33.     Further, through its Members, the Committee has embraced the role of an inquisitorial tribunal seeking evidence of criminal activity. By way of example, on December 23, 2021, Chairman Thompson told The Washington Post the Select Committee was investigating whether President Trump's actions on January 6, 2021, "warrant a [criminal] referral." [2]  Similarly, Rep. Elaine Luria (D-VA 2nd Dist.) told CNN: "[T]hat's exactly why we're conducting this investigation, to find out all the

---

[2]   Tom Hamburger, Jacqueline Alemany, Josh Dawsey, and Matt Zapotosky, *Thompson Says Jan. 6 Committee Focused on Trump's Hours of Silence During Attack, Weighing Criminal Referrals, The Washington Post (Dec. 23, 2021,* available at https://www.washingtonpost.com/politics/january-6-thompson-trump/2021/12/23/36318a92-6384-11ec-a7e8-3a8455b71fad_story .html.

facts, . . . and . . . hold people accountable who are responsible."[3]   And Rep. Liz Cheney (R-WY At-Large) told Rolling Stone: "We must know what happened here at the Capitol. We must also know what happened every minute of that day in the White House—every phone call, every conversation, every meeting leading up to, during, and after the attack."[4]

34.     The Committee has slipped completely free from the moorings of its original charter.  Thus lacking any "valid legislative purpose" to seek the subscriber information as well as connection records and records of session times and durations sought by its February 1, 2022 subpoena to Defendant, the Subpoena is unenforceable.  The unlawful composition of the Select Committee and its lack of a ranking member likewise render the Subpoena unenforceable.  This Court should therefore issue a Declaratory Judgment that the Subpoena is ultra vires, unlawful, and unenforceable.

## COUNT II
### Declaratory Relief
### 28 U.S.C. § 2201
### Subpoena Unlawful—Violation of Stored Communications Act,
### 18 U.S.C. § 2702, and Telecommunications Act, 47 U.S.C. § 222

---

[3]   Zachary Cohen and Annie Grayer, January 6 Committee Says it Would Make Criminal Referrals if 'Appropriate,' but that Could be a Long Way Off, CNN (Dec. 21, 2021), available at https://www.cnn.com/2021/12/21/politics/january-6-committee-criminal-referrals/index.html.
[4]   Peter Wade, Cheney: Investigate Trump's 'Every Call, Every Conversation, Every Meeting' on Jan. 6, *Rolling Stone* (July 27, 2021), available at https://www.rollingstone.com/politics/politics-news/cheney-investigate-trump-capitol-attack- communications-1203084/.

35.    Plaintiff repeats, realleges, and incorporates all previous paragraphs herein as if set forth herein.

36.    Subject to specifically enumerated exceptions not applicable here, the federal Stored Communications Act provides that "a person or entity providing electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage to that service." 18 U.S.C. § 2702(a)(1).

37.    The Stored Communications Act further provides that an electronic service provider—such as Defendant—"shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications …) to any governmental entity." 18 U.S.C. § 2702(a)(3).

38.    The exceptions for disclosures found in 18 U.S.C. § 2702(c) do not apply to the Congressional subpoena at issue in this case.

39.    Similarly, the Telecommunications Act of 1996 protects the confidentiality of "customer proprietary network information," which includes, *inter alia*, phone logs and location information, "[e]xcept as provided by law or with approval of a customer." 47 U.S.C. § 222.

40.    The subscriber information as well as connection records and records of session times and durations sought by the Subpoena served upon Defendant

necessarily seek the "contents of a communication while in electronic storage," or, in the alternative, because neither Plaintiff nor any law authorize the disclosure of these records, the Subpoena is unenforceable and this Court should issue a Declaratory Judgment holding that the Subpoena is ultra vires, unlawful, and unenforceable.

## COUNT III
### Declaratory Relief
### 28 U.S.C. § 2201
### Compliance with Subpoena Unlawful—Violation of Attorney-Client Privilege, FED. R. EVID. 501 and TEX. R. EVID. 503, and Work Product Doctrine

41.     Plaintiff repeats, realleges, and incorporates all previous paragraphs herein as if set forth herein.

42.     As a consultant to the attorneys licensed in the State of Texas and doing business in Collin County, Texas, and elsewhere, Plaintiff has an ethical duty and right to protect communications rendered in Plaintiff's role as a confidential consultant to the Attorneys and which may reveal attorney-client privileged information, work product, proprietary information, confidential information or information that may contain or reveal any other applicable privilege.

43.     Plaintiff has a contractual obligation to protect and to not disclose, or permit others to disclose, confidential and proprietary information during the time that Plaintiff was conducting an investigation of the Election for the Attorneys.

44.     Plaintiff uses and has used the phone number that is subject to the Subpoena to communicate with the Attorneys' clients, other consultants retained by Attorneys, and with witnesses and others in connection with Plaintiff's consulting having nothing to do with the Select Committee's investigation as defined by H. Res. 503.

45.     The Subpoena would force Defendant to reveal Plaintiff's attorney-client and work product protected information which would breach Plaintiff's Confidential and Proprietary NDA with the Attorneys without providing the Attorneys or their clients with the opportunity to object.

46.     Compliance with the Subpoena while precluding Plaintiff from any opportunity to review the proposed disclosure and assert applicable privileges, violates FED. R. EVID. 501 and TEX. R. EVID. 503.

**COUNT IV**
**Declaratory Relief**
**28 U.S.C. § 2201**
**Subpoena Unlawful—Violation of First Amendment**

47.     Plaintiff repeats, realleges, and incorporates all previous paragraphs herein as if set forth herein.

48.     The Supreme Court has long recognized the First Amendment right of the people to associate freely for expressive purposes, and that the compelled

disclosure of affiliation with advocacy groups may chill or refrain that associative conduct. *See, e.g., NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 462 (1958).

49.     The government's effort to compel disclosure of associative conduct must be reviewed with exacting scrutiny, meaning the government must show that its action is narrowly tailored to meet a sufficiently important government interest to justify compelling the disclosure. *Americans for Prosperity Found. V. Bonta,* 141 S. Ct. 2373 (2021).

50.     The Subpoena is neither narrowly tailored nor does it advance a sufficiently important governmental interest to permit compliance by Defendant.

51.     Simply put, no governmental interest could be sufficiently important to permit it to delve through the data connected with every phone call, text message or email communication placed or received by Plaintiff over a three-month period.

52.     The Subpoena is an invalid attempt to infringe Plaintiff's First Amendment rights and the First Amendment rights of the Attorneys and their clients, and the rights guaranteed by TEX. CONST. art I, § 8, and it should not be enforced.

### <u>COUNT V</u>
**Declaratory Relief**
**28 U.S.C. § 2201**
**Subpoena Unlawful—Violation of Fourth Amendment**
**and TEX. CONST. art. 1 § 9**

53.     Plaintiff repeats, realleges, and incorporates all previous paragraphs herein as if set forth herein.

54.     The Fourth Amendment guarantees the right of the people to free from unreasonable searches and seizures, as well as guaranteeing a person's reasonable expectation of privacy from governmental intrusion. *See, e.g., Katz v. United States,* 389 U.S. 347 (1967).  The same rights are guaranteed by TEX. CONST. art I, § 9.

55.     Congress has no general or inherent authority to issue subpoenas to pry into private affairs or to seek information untethered to any valid legislative purpose. *McGrain*, 273 U.S. at 173-74.

56.     The Subpoena has no valid legislative purpose is an unreasonable and unlawful invasion of Plaintiff's right to be free from unreasonable searches and seizures and Plaintiff's right to privacy and the right of privacy of the Attorneys and their clients. The subpoena is invalid and thus unenforceable.

## **COUNT VI**
### **Injunctive Relief**
### **28 U.S.C. § 2202, FED. R. CIV. PRO. 65**

57.     Plaintiff repeats, realleges, and incorporates all previous paragraphs herein as if set forth herein.

58.     Because the Subpoena to Defendant is ultra vires, unlawful, and unenforceable, for the reasons set forth herein, Plaintiff is likely to succeed on  the merits of this action.

59.     No plain, adequate or complete remedy at law is available to Plaintiff to redress the wrongs alleged herein should the Defendant disclose the records described in the Subpoena.

60.     Should this Court not prevent the disclosure of Plaintiff's subscriber information as well as connection records and records of session times and durations, Plaintiff, the Attorneys and their clients are likely to suffer irreparable harm.

61.     The balance of the equities weighs in Plaintiff's favor and the public interest favors against disclosure so as to prevent the unwarranted intrusion into the affairs of citizens absent the requisite legal authorization and "valid legislative purpose" of any Congressional subpoena.

62.     Accordingly, this Court should issue an Order enjoining Defendant from complying with the Subpoena and from producing Plaintiff's records pursuant to the Subpoena.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff James Phillip Waldron prays for relief as follows:

1.     For a declaration pursuant to 28 U.S.C. § 2201 that the Subpoena was issued without legal authority, was issued in violation of the First and Fourteenth Amendments of the U.S. Constitution and Article I § 9 of the Texas Constitution, and that the Defendant's production of records pursuant to the Subpoena would violate the Stored Communications Act, U.S.C. § 2702(a)(3) and the

Telecommunications Act of 1996, 47 U.S.C. § 222, and would further violate the attorney-client privilege of the Attorney's clients and the work product of the Attorneys;

2.      For an order enjoining the Defendants from producing or otherwise disclosing the records described in the Subpoena; and

3.      For such other and further relief as this Court deems just and proper.

Dated:  May 31, 2022

Respectfully submitted,

*/s/ S. Michael McColloch*
S. Michael McColloch
S. MICHAEL MCCOLLOCH PLLC
6060 N. Central Expy, Suite 500
Dallas, Texas 75206
214-643-6055
smm@mccolloch-law.com

Wm. Charles Bundren
BUNDREN LAW GROUP PLLC
2591 Dallas Parkway, Suite 300
Frisco, Texas 75034
214-808-3555
charles@bundrenlaw.net

Karen L. Cook
KAREN COOK LAW PLLC
6060 N. Central Expy, Suite 500
Dallas, Texas 75206
214-643-6054
karen@karencooklaw.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 31, 2022, the foregoing document
was filed with the Clerk for the United States District Court for the Eastern District of
Texas using the CM/ECF electronic filing system, and that service of such filing will
be made electronically on all counsel of record.  Defendant has waived formal service
of process.

_/s/  Karen Cook_
Karen Cook, Esq.