## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **JAMES PHILLIP WALDRON,** | § § § | |
| | § | **CIVIL ACTION NO.** |
| **Plaintiff,** | § | |
| | § | **4:22-cv-00317-ALM** |
| **v.** | § | |
| | § | **JUDGE MAZZANT** |
| **AT&T, Inc.** | § | |
| | § | |
| **Defendant.** | § | |

---

## INTERVENOR'S COMPLAINT IN INTERVENTION

---

TO THE HONORABLE COURT:

Bundren Law Group, PLLC ("Intervenor"), after receiving permission from the Court, intervenes as a party-plaintiff as authorized by Federal Rule of Civil Procedure 24, and says in Complaint as follows:

### INTRODUCTION

1.      This is an action for declaratory judgment and injunctive relief from a subpoena (the "Subpoena") served upon Defendant AT&T, Inc. ("AT&T"). This action removed from the 471st District Court, Collin County, Texas.  The subpoena

---

**INTERVENOR COMPLAINT IN INTERVENTION**                                          **PAGE 1**

was issued by the "Select Committee to Investigate the January 6th Attack on the United States Capitol" (the "Committee") and demands the production of "all subscriber information" in the custody of AT&T concerning Col. Plaintiff James Phillip Waldron's cellular telephone account for the period November 1, 2020, to January 31, 2021.

2.     The "subscriber information" sought by the subpoena includes Col. Waldron's personal contact, account billing, and authorized user information, in addition to connection records such as the times, duration, and recipients of all calls or text messages including Plaintiff's information that Plaintiff is under contract with Intervenor to not disclose which is privileged and confidential pursuant to the contract.

3.     In December, 2020, Plaintiff was retained as a consulting expert to Intervenor to perform services necessary to the performance of professional legal services by Intervenor in the representation of clients and in anticipation of litigation. That contractual relationship lasted continuously through January 31, 2021 and still exist today.

4.     The disclosure of the Plaintiff's account information by AT&T will reveal records of communications relating to Plaintiff's contractual engagement with Intervenor and is prohibited as in violation of the attorney-client privilege and work product doctrine.  Moreover, the Subpoena was issued without any legal authority

because the Committee failed to comport with the requirements under its authorizing resolution, H. Res. 503, H. Res. 503, 117th Cong. (2021).  Further, the Subpoena exceeds the scope of the Congress's power to investigate for a genuine legislative purpose, was issued in violation of the Stored Communications Act, 18 U.S.C. §§ 2702(a)(1), (3) and the Telecommunications Act of 1996, 47 U.S.C. § 222, and violates Intervenor's legal rights under the First and Fourth Amendments of the U.S. Constitution and Article I, §§ 8 and 9 of the Texas Constitution.

5.     Intervenor seeks a judgment declaring that the Subpoena was invalidly issued under its own congressional enabling authorization, violates federal statutes, violates Intervenor's rights under the First and Fourth Amendments of the U.S. Constitution and Article I, §§ 8 and 9 of the Texas Constitution, and would invade the attorney-client privilege and the sanctity of Intervenor's attorney work product. Intervenor further seeks injunctive relief to prohibit AT&T from complying with such illegal subpoena and disclosing such privileged information.

## PARTIES

6.     Plaintiff James Phillip Waldron is believed to be an adult resident of the State of Texas. Plaintiff is a citizen of the State of Texas and the United States.

7.      Defendant AT&T, Inc., is a Delaware corporation with its principal place of business in Dallas, Texas.  CT Corporation System, doing business at 1999 Bryan St., Suite 900, Dallas, TX 75201-3136 is the agent for service of process on

Defendant AT&T, which filed a notice of removal to this Court from the 471st District Court, Collin County, Texas, on April 15, 2022 (Doc. 1).

8.      Intervenor is a law firm with its principal place of business and doing business in Frisco, Texas, Collin County, Texas.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States.  This Court has supplemental jurisdiction over Intervenor's state law claims because they derive from a common nucleus of operative facts with the federal constitutional and statutory claims alleged herein, such that the state law claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," pursuant to 28 USC § 1367(a).

10.      Venue is properly before this Court under 28 USC § 1391(a)(2), because a substantial part of the events giving rise to this claim occurred in Collin County, Texas.

## STATEMENT OF FACTS

11.      Plaintiff is a consultant retained by Intervenor with its principal place of business in Collin County, Texas, to assist in investigating matters for clients regarding the November 2020 Presidential election (the "Election"). Plaintiff has been retained by contract with Intervenor which conducts its principal business and

resides in Collin County, Texas, and elsewhere to assist in the investigation of matters related to the Election for clients of Intervenor.

12.    Plaintiff entered into agreements with Intervenor residing in Collin County, Texas, to not disclose and to keep confidential all information regarding the investigation being conducted by Intervenor and for Intervenor's clients concerning the November 2020 Presidential election, which Plaintiff assisted and investigated for Intervenor (the "Confidential and Proprietary NDA"). Intervenor residing in Collin County, Texas, selected Plaintiff to assist Intervenor, on behalf of its clients, in investigating the Election with the understanding that Plaintiff would not disclose any information Intervenor, the clients of the Intervenor, the communications among and between Plaintiff, clients, and Intervenor, and the work product prepared by the Plaintiff pursuant to these engagements.

13.    The Confidential and Proprietary NDA requires Plaintiff to keep confidential and to not disclose any information regarding any investigation of the Election and to take actions to protect the confidential and proprietary information investigated for Intervenor regarding the Election for and on behalf of Intervenor and its clients.

14.    Plaintiff understood the confidential, proprietary and privileged nature of the investigation in which Plaintiff was retained to assist for Intervenor, and Plaintiff agreed to keep all information regarding the investigation confidential,

proprietary and privileged.  Intervenor is bound by the attorney-client privilege with its clients for whom Plaintiff agreed to consult on a confidential, proprietary and privileged manner.

15.     Allegedly, on January 6, 2021, a group of protestors in Washington, D.C., entered the United States Capitol, allegedly breached security, and allegedly disrupted the counting of the Electoral College votes until order was restored. The United States Department of Justice has reportedly arrested and charged more than 725 individuals in connection with the events of January 6th. Plaintiff had no involvement in the events of January 6th. Intervenor had no involvement in the events of January 6th.   Nevertheless, a committee of the House of Representatives of the Congress of the United States of America is seeking records from Defendant that contain or would reveal confidential and proprietary information, and infringe upon the attorney-client privileges and attorney work product privileges held by numerous clients of Intervenor as described above.

16.     On June 28, 2021, U.S. House Speaker Nancy Pelosi introduced House Resolution 503 ("H. Res. 503"), "Establishing the Select Committee to Investigate the January 6th Attack on the United States Capitol."  Two days later, the House passed H. Res. 503.  H. RES. 503, 117th Cong. (2021).

17.     H. Res. 503 instructs the Speaker of the House to "appoint 13 Members to the Select Committee, 5 of whom shall be appointed after consultation with the

minority leader," and to designate one Member to serve as chair of the Select Committee.   But the Speaker only appointed nine members to the Select Committee—seven Democrats and two Republicans.  Thus, the Select Committee is not an authorized congressional committee because its very composition fails to comport with its own authorizing resolution. See H. Res. 503, Section 2. Speaker Pelosi appointed and designated Rep. Bennie Thompson (D-MS 2nd Dis.) to serve as Chairman of the Select Committee.

18.     H. Res 503 Section 3 establishes the Select Committee for three purposes:  (1) To investigate and report upon the facts, circumstances, and causes relating to the January 6, 2021, domestic terrorist attack upon the United States Capitol Complex (hereafter referred to as the "domestic terrorist attack on the Capitol") and relating to the interference with the peaceful transfer of power, including facts and causes relating to the preparedness and response of the United States Capitol Police and other Federal, State, and local law enforcement agencies in the National Capital Region and other instrumentalities of government, as well as the influencing factors that fomented such an attack on American representative democracy while engaged in a constitutional process;  (2) To examine and evaluate evidence developed by relevant Federal, State, and local governmental agencies regarding the facts and circumstances surrounding the domestic terrorist attack on the Capitol and targeted violence and domestic terrorism relevant to such terrorist

attack; and (3) To build upon the investigations of other entities and avoid unnecessary duplication of efforts by reviewing the investigations, findings, conclusions, and recommendations of other executive branch, congressional, or independent bipartisan or nonpartisan commission investigations into the domestic terrorist attack on the Capitol, including investigations into influencing factors related to such attack.

19.     H. Res. 503 Section 4 thus establishes three "functions" of the Select Committee: (1) to "investigate the facts, circumstances, and causes relating to the domestic terror attack on the Capitol"; (2) to "identify, review, and evaluate the causes of and the lessons learned from the domestic terrorist attack on the Capitol"; and (3) to "issue a final report to the House containing such findings, conclusions, and recommendations for corrective measures described in subsection (c) as it may deem necessary."

20.     Subsection (c) of Section 4 describes three categories of "corrective measures": "changes in law, policy procedure, rules, or regulations that could be taken" (1) "to prevent future acts of violence, domestic terrorism, and domestic violent extremism, including acts targeted at American democratic institutions"; (2) "to improve the security posture of the United States Capitol Complex while preserving accessibility of the Capitol Complex for all Americans"; and (3) "to

strengthen the security and resilience of the United States American democratic institutions against violence, domestic terrorism, and domestic violent extremism."

21.    H. Res. 503 Section 5(c)(4) authorizes the Chair of the Select Committee to "issue subpoenas pursuant to clause 2(m) of Rule XI [subpoena power] in the investigation and study conducted pursuant to sections 3 and 4 of this resolution," but Res. 503 Subsections (A) & (B) of Section 5(c)(6) limit that authority by requiring consultation with, and notice to, the ranking minority member of the Select Committee prior to issuing a subpoena.  The Chair did not consult with the ranking member prior to issuing the Subpoena on Defendant, because the Select Committee does not have a ranking member.  On November 2, 2021, the General Counsel of the House of Representatives admitted that "there were no majority or ranking members" of the Select Committee.

22.    On February 1, 2022, Chairman Thompson, on behalf of the Select Committee, and without the required consultation and notice to a ranking member, issued a subpoena to Defendant seeking records concerning phone numbers purportedly listed in "Section B, below." (A copy of the Subpoena is attached hereto as Exhibit 1 and incorporated and adopted herein by reference for all purposes).

23.    On February 9, 2022, Defendant wrote Plaintiff to advise that it "ha[d] received a subpoena requiring the production of certain records associated with the phone number referenced above" (identifying the number assigned to Plaintiff) and

attaching "[a] copy of the subpoena," but excluding "Section B, which identifies the phone number referenced above."

24.     In other words, nowhere within the copy of the Subpoena provided to Plaintiff is Plaintiff's identity, or any other customer whose records are sought, disclosed.

25.     The Subpoena instructs Defendant to produce subscriber information and cell phone data associated with Plaintiff's personal cell phone. The subscriber information demanded by the Subpoena includes subscriber names and contact information, authorized users, time of service provided, account changes, associated IP addresses, and other metadata. The cell phone data requested could include all calls, text messages, and other records of communications associated with the phone number. These data can be used for historic cell site analysis. The Subpoena seeks all such data from November 1, 2020, through January 31, 2021.

26.     As previously described herein, Plaintiff is a consultant working for Intervenor doing business in Collin County, Texas, who is conducting an investigation of the Election during the time period covered by the Subpoena. Plaintiff used the account associated with the phone number for which the information is sought to communicate with Intervenor and about the Intervenor's clients, and those communications are protected by, *inter alia*, the attorney-client privilege, the work product doctrine and the Confidential and Proprietary NDA.

<u>**COUNT I**</u>
**Declaratory Relief**
**28 U.S.C. § 2201**
**Subpoena Unlawful—No Valid Legislative Purpose**

27.     Intervenor repeats, realleges, and incorporates all previous paragraphs herein as if set forth herein.

28.     Congress' broad "power of inquiry—with process to enforce it—is an essential and appropriate auxiliary to the legislative function." *McGrain v. Daugherty*, 273 U.S. 135, 174 (1927). Accordingly, Congress and its duly authorized committees may issue a subpoena where the information sought "is related to, and in furtherance of, a legitimate task of Congress," *Watkins v. United States*, 354 U.S. 178, 187 (1957), and the subpoena serves a "valid legislative purpose." *Quinn v. United States*, 349 U.S. 155, 161 (1955). At the same time, because Congress's subpoena power "is justified as an adjunct to the legislative process, it is subject to several limitations," *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020), limitations which stem directly from the Constitution. *Kilbourn v. Thompson*, 103 U.S. 168, 182-89 (1880).

29.     Specifically, the Constitution permits Congress to enact only certain kinds of legislation, see, e.g., U.S. CONST. art. I, § 8, and while Congress's power to investigate "is justified as an adjunct to the legislative process, it is subject to several limitations." *Mazars,* 140 S. Ct. at 2031. These limitations include that Congress

may not issue a subpoena for the purposes of "law enforcement" because "those powers are assigned under our Constitution to the Executive and the Judiciary," *Quinn*, 349 U.S. at 161, or to "try" someone "of any crime or wrongdoing," *McGrain*, 273 U.S. at 179; nor does Congress have any "general power to inquire into private affairs and compel disclosure," *id*., at 173-74, or the "power to expose for the sake of exposure," *Watkins*, 354 U.S. at 200. Also importantly, congressional investigations "conducted solely for the personal aggrandizement of the investigators or to 'punish' those investigated are indefensible." *Watkins*, 354 U.S. at 187, *Mazars*, 140 S. Ct. at 2032. Additionally, as the Supreme Court has recognized: "[t]he Bill of Rights s applicable to [congressional] investigations as to all forms of government action," and the Select Committee may not "abridge[]. . . the First Amendment freedoms of speech, press, religion, or political belief and association" in the name of advancing its investigation. *Watkins*, 354 U.S. at 188. *See also, United States v. Rumely*, 345 U.S. 41, 46-47 (1953).

30.     Thus, to ensure that a Congressional inquiry meets a "valid legislative purpose," an inquiring committee must define "with the same degree of explicitness and clarity that the Due Process Clause requires in the expression of any element of a criminal offense" its "jurisdictional pertinency" so as to avoid the "vice for vagueness." *Watkins,* 354 U.S. at 206-09. See also id. at 206 ("When the definition of jurisdictional pertinency is as uncertain and wavering as in the case of the Un-

American Activities Committee, it becomes extremely difficult for the Committee to limit its inquiries to statutory pertinency").

31.     The Committee has not, and cannot, demonstrate a "valid legislative purpose" justifying its need for a subpoena of private citizen data—the subscriber information as well as connection records and records of session times and durations—especially for a citizen who was not involved with and did not in any way participate in the "attack on the Capitol" on January 6.  Consequently, the Committee cannot establish sufficient jurisdictional pertinence justifying the breadth of the Subpoena's demand for private citizen data pertaining to Intervenor.

32.     The Committee has attempted to expand its jurisdiction and the scope of its investigation far beyond the specific confines of H. Res. 503.  In fact, House General Counsel Douglas Letter admitted this in a hearing, indicating that the Select Committee was instead going to investigate the investigators of election fraud, apparently on the unsupported theory that legal work to uncover fraud and expressions of concern that the 2020 Election was affected by fraud—expressions fully protected by the First Amendment—somehow "brought about" the riotous activity of a subset of demonstrators on January 6:

> [W]e need to figure out what was the atmosphere that brought . . . about [the events of January 6, including] the many attempts that were made before the election to try to build the nature of mistrust about the election itself, which goes to undermine our democracy, so that if

President Trump did lose he would be able to say that his is unfair and to generate lots of anger and rage that led to January 6.[1]

33.     The Committee itself has disavowed any intention to confine itself to the specific limitations of H. Res. 503.   In one recent press release the Committee stated directly its view that "attempts to promote unsupported claims of election fraud" were among the "causes that contributed to the violence on January 6."   The Chairman has gone so far as to label as criminal the mere recommendation of "a process by which elections could be manipulated in various states," apparently referring to any proposals to invalidate electors chosen from questioned voting results.   The Chairman claimed that a witness simply advancing a "recommendation that led states to believe they could overturn" the 2020 election results would have thereby "contributed to the January 6 insurrection."

34.     Further, through its Members, the Committee has embraced the role of an inquisitorial tribunal seeking evidence of criminal activity. By way of example, on December 23, 2021, Chairman Thompson told The Washington Post the Select Committee was investigating whether President Trump's actions on January 6, 2021, "warrant a [criminal] referral." [2]  Similarly, Rep. Elaine Luria (D-VA 2nd Dist.) told

---

[1]   *See* Hrg T., Trump v. Thompson, No. 21-cv-002769 (Nov. 4, 2021).

[2]   Tom Hamburger, Jacqueline Alemany, Josh Dawsey, and Matt Zapotosky, *Thompson Says Jan. 6 Committee Focused on Trump's Hours of Silence During Attack, Weighing Criminal Referrals*, *The Washington Post (Dec. 23, 2021,* available at https://www.washingtonpost.com/   politics/january-6-thompson-trump/2021/12/23/36318a92-

CNN: "[T]hat's exactly why we're conducting this investigation, to find out all the facts, . . . and . . . hold people accountable who are responsible."[3]   And Rep. Liz Cheney (R-WY At-Large) told Rolling Stone: "We must know what happened here at the Capitol. We must also know what happened every minute of that day in the White House—every phone call, every conversation, every meeting leading up to, during, and after the attack."[4]

35.     The Committee has slipped completely free from the moorings of its original charter.  Thus, lacking any "valid legislative purpose" to seek the subscriber information as well as connection records and records of session times and durations sought by its February 1, 2022 subpoena to Defendant, the Subpoena is unenforceable.  The unlawful composition of the Select Committee and its lack of a ranking member likewise render the Subpoena unenforceable.  This Court should therefore issue a Declaratory Judgment that the Subpoena is ultra vires, unlawful, and unenforceable.

## COUNT II
## Declaratory Relief

---

6384-11ec-a7e8-3a8455b71fad_story .html.

[3]   Zachary Cohen and Annie Grayer, January 6 Committee Says it Would Make Criminal Referrals if 'Appropriate,' but That Could be a Long Way Off, CNN (Dec. 21, 2021), available at  https://www.cnn.com/2021/12/21/politics/january-6-committee-criminal-referrals/index.html.

[4]   Peter Wade, Cheney: Investigate Trump's 'Every Call, Every Conversation, Every Meeting' on Jan. 6 , *Rolling Stone* (July 27, 2021), available at https://www.rollingstone.com/politics/ politics-news/cheney-investigate-trump-capitol-attack-communications-1203084/.

**28 U.S.C. § 2201**
**Subpoena Unlawful—Violation of Stored Communications Act,**
**18 U.S.C. § 2702, and Telecommunications Act, 47 U.S.C. § 222**

36.     Intervenor repeats, realleges, and incorporates all previous paragraphs herein as if set forth herein.

37.     Subject to specifically enumerated exceptions not applicable here, the federal Stored Communications Act provides that "a person or entity providing electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage to that service." 18 U.S.C. § 2702(a)(1).

38.     The Stored Communications Act further provides that an electronic service provider—such as Defendant—"shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications …) to any governmental entity." 18 U.S.C. § 2702(a)(3).

39.     The exceptions for disclosures found in 18 U.S.C. § 2702(c) do not apply to the Congressional subpoena at issue in this case.

40.     Similarly, the Telecommunications Act of 1996 protects the confidentiality of "customer proprietary network information," which includes, *inter alia*, phone logs and location information, "[e]xcept as provided by law or with approval of a customer." 47 U.S.C. § 222.

41.     The subscriber information as well as connection records and records of session times and durations sought by the Subpoena served upon Defendant necessarily seek the "contents of a communication while in electronic storage," or, in the alternative, because neither Plaintiff nor any law authorize the disclosure of these records, the Subpoena is unenforceable and this Court should issue a Declaratory Judgment holding that the Subpoena is ultra vires, unlawful, and unenforceable.

## COUNT III
**Declaratory Relief**
**28 U.S.C. § 2201**
**Compliance with Subpoena Unlawful—Violation of Attorney-Client Privilege, FED. R. EVID. 501 and TEX. R. EVID. 503, and Work Product Doctrine**

42.     Intervenor repeats, realleges, and incorporates all previous paragraphs herein as if set forth herein.

43.     As a consultant to Intervenor and its attorneys licensed in the State of Texas and doing business in Collin County, Texas, and elsewhere, Plaintiff has an ethical duty and right to protect communications rendered in Plaintiff's role as a confidential consultant to Intervenor and which may reveal attorney-client privileged information, work product, proprietary information, confidential information or information that may contain or reveal any other applicable privilege.

44.     Plaintiff has a contractual obligation to protect and to not disclose, or permit others to disclose, confidential and proprietary information during the time that Plaintiff was conducting an investigation of the Election for Intervenor.

45.     Plaintiff uses and has used the phone number that is subject to the Subpoena to communicate with Intervenor, other consultants retained by Intervenor, and with witnesses and others in connection with Plaintiff's consulting having nothing to do with the Select Committee's investigation as defined by H. Res. 503.

46.     The Subpoena would force Defendant to reveal Plaintiff's attorney-client and work product protected information which would breach Plaintiff's Confidential and Proprietary NDA with Intervenor without providing Intervenor or its clients with the opportunity to object.

47.     Compliance with the Subpoena while precluding Plaintiff from any opportunity to review the proposed disclosure and assert applicable privileges, violates FED. R. EVID. 501 and TEX. R. EVID. 503.

### COUNT IV
**Declaratory Relief**
**28 U.S.C. § 2201**
**Subpoena Unlawful—Violation of First Amendment**

48.     Intervenor repeats, realleges, and incorporates all previous paragraphs herein as if set forth herein.

49.     The Supreme Court has long recognized the First Amendment right of the people to associate freely for expressive purposes, and that the compelled disclosure of affiliation with advocacy groups may chill or refrain that associative conduct. *See, e.g., NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 462 (1958).

50.     The government's effort to compel disclosure of associative conduct must be reviewed with exacting scrutiny, meaning the government must show that its action is narrowly tailored to meet a sufficiently important government interest to justify compelling the disclosure. *Americans for Prosperity Found. V. Bonta,* 141 S. Ct. 2373 (2021).

51.     The Subpoena is neither narrowly tailored nor does it advance a sufficiently important governmental interest to permit compliance by Defendant.

52.     Simply put, no governmental interest could be sufficiently important to permit it to delve through the data connected with every phone call, text message or email communication placed or received by Plaintiff over a three-month period.

53.     The Subpoena is an invalid attempt to infringe Intervenor's First Amendment rights and the First Amendment rights of Intervenor's clients, and the rights guaranteed by TEX. CONST. art I, § 8, and it should not be enforced.

### COUNT V
**Declaratory Relief**
**28 U.S.C. § 2201**
**Subpoena Unlawful—Violation of Fourth Amendment**
**and TEX. CONST. art. 1 § 9**

54.     Intervenor repeats, realleges, and incorporates all previous paragraphs herein as if set forth herein.

55.     The Fourth Amendment guarantees the right of the people to free from unreasonable searches and seizures, as well as guaranteeing a person's reasonable expectation of privacy from governmental intrusion. *See, e.g., Katz v. United States,* 389 U.S. 347 (1967).  The same rights are guaranteed by TEX. CONST. art I, § 9.

56.     Congress has no general or inherent authority to issue subpoenas to pry into private affairs or to seek information untethered to any valid legislative purpose. *McGrain*, 273 U.S. at 173-74.

57.     The Subpoena has no valid legislative purpose is an unreasonable and unlawful invasion of Intervenor's 's right to be free from unreasonable searches and seizures and Intervenor's right to privacy and the right of privacy of Intervenor and its clients. The subpoena is invalid and thus unenforceable.

## COUNT VI
### Injunctive Relief
### 28 U.S.C. § 2202, FED. R. CIV. PRO. 65

58.     Intervenor repeats, realleges, and incorporates all previous paragraphs herein as if set forth herein.

59.     Because the Subpoena to Defendant is ultra vires, unlawful, and unenforceable, for the reasons set forth herein, Intervenor is likely to succeed on  the merits of this action.

60.     No plain, adequate or complete remedy at law is available to Intervenor to redress the wrongs alleged herein should the Defendant disclose the records described in the Subpoena.

61.     Should this Court not prevent the disclosure of Plaintiff's subscriber information as well as connection records and records of session times and durations, Intervenor and its clients are likely to suffer irreparable harm.

62.     The balance of the equities weighs in Intervenor's favor and the public interest favors against disclosure so as to prevent the unwarranted intrusion into the affairs of citizens absent the requisite legal authorization and "valid legislative purpose" of any Congressional subpoena.

63.     Accordingly, this Court should issue an Order enjoining Defendant from complying with the Subpoena and from producing Plaintiff's records pursuant to the Subpoena.

**PRAYER FOR RELIEF**

WHEREFORE, Intervenor prays for relief as follows:

1.      For a declaration pursuant to 28 U.S.C. § 2201 that the Subpoena was issued without legal authority, was issued in violation of the First and Fourteenth

Amendments of the U.S. Constitution and Article I § 9 of the Texas Constitution, and that the Defendant's production of records pursuant to the Subpoena would violate the Stored Communications Act, U.S.C. § 2702(a)(3) and the Telecommunications Act of 1996, 47 U.S.C. § 222, and would further violate the attorney-client privilege of Intervenor and the attorney work product of Intervenor;

2.      For an order enjoining the Defendant from producing or otherwise disclosing the records described in the Subpoena; and

3.      For such other and further relief as this Court deems just and proper.

Respectfully submitted,

By: /s/ Charles Bundren
 **BUNDREN LAW GROUP, PLLC**
Wm. Charles Bundren, Esq.
State Bar No. 03343200
2591 Dallas Parkway, Suite 300
Frisco, Texas 75034
(214) 808-3555      Telephone
(972) 624-5340      Facsimile
e-mail:      charles@bundrenlaw.net
**ATTORNEY FOR INTERVENOR:**
**BUNDREN LAW GROUP, PLLC**

## CERTIFICATE OF ELECTRONIC FILING

The undersigned hereby certifies that this document has been filed by electronic means through the court's CM/ECF electronic filing system on the date indicated below.

## CERTIFICATE OF SERVICE UNDER LOCAL RULE

Pursuant to LOCAL RULE CV-5 (c)&(d) of the Local Civil Rules of the United States District Court for the Eastern District of Texas, Notice of Electronic

Filing of this document automatically generated by this Court's CM/ECF system constitutes service of this document under Federal Rule of Civil Procedure 5(b)(2)(E) and is sufficient service by serving the parties indicated below. In accordance with the United States District Court for the Eastern District of Texas Local Rule CV-5(a)(7)(D) a copy of this document was served opposing counsel in electronic form by serving all legal counsel as indicated below.

## **CERTIFICATE OF SERVICE**

This is to certify that on this 20th day of July, 2022, a true and correct copy of the foregoing document was served in accordance with the Federal Rules of Civil Procedure and the United States District Court for the Eastern District of Texas Local Rules on all legal counsel of record for any party by serving the following:

Thomas G. Yoxall, Esq.
Texas Bar No. 00785304
tyoxall@lockelord.com
Matthew H. Davis, Esq.
Texas Bar No. 24069580
mdavis@lockelord.com
Tatianna J. Witter, Esq.
Texas Bar No. 24127424
Tatianna.witter@lockelord.com
**LOCKE LORD LLP**
2200 Ross Ave., Suite 2800
Dallas, TX 75201
Phone:           214-740-8000
Facsimile: 214-740-8800
**ATTORNEY FOR DEFENDANT:**
**AT&T, INC.**

S. Michael McColloch, Esq.
**S. MICHAEL MCCOLLOCH PLLC**
6060 N. Central Expressway, Suite 500
Dallas, TX 75206
Phone:           214-643-6055
Email:           SMM@McColloch-law.com
**ATTORNEY FOR PLAINTIFF:**

**JAMES PHILIP WALDRON**

Karen L. Cook, Esq.
**KAREN COOK LAW PLLC**
6060 N. Central Expressway, Suite 500
Dallas, TX 75206
Phone:              214-643-6054
Email:              Karen@Karencooklaw.com
**ATTORNEY FOR PLAINTIFF:**
**JAMES PHILIP WALDRON**

__x__ by the Court's CM/ECF Pacer electronic filing System pursuant to FRCP 5(b)(2)(E) and 5(b)(3), and LOCAL RULE CV-5 (c)&(d),

____ by certified mail return receipt requested deposited with the United States Postal Service on the date indicated above pursuant to FRCP 5(b)(2)(C),

____ by email at the email address indicated above pursuant to FRCP 5(b)(2)(E), and in accordance with the United States District Court for the Eastern District of Texas Local Rule CV-5(a)(7)(D) a copy of this document was served opposing counsel in electronic form by serving opposing counsel at the email addresses listed herein.

and/or

____ by hand delivery service on the date indicated above pursuant to FRCP 5(b(2)(A) and (B).

By: /s/ Charles Bundren
**ATTORNEY FOR INTERVENOR:**
**BUNDREN LAW GROUP, PLLC**