# United States District Court
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

JAMES PHILLIP WALDRON §
§
            Plaintiff, §
§
and §
§      Civil Action No.  4:22cv317-ALM
§
BUNDREN LAW GROUP PLLC §
§      Judge Mazzant
           Plaintiff-Intervenor, §
§
v. §
§
AT&T, INC.; §
§    **FIRST AMENDED COMPLAINT**
BENNIE G. THOMPSON, in his §    **FOR DECLARATORY AND**
official capacity as Chair of the §    **INJUNCTIVE RELIEF**
Select Committee to Investigate the §
January 6th Attack on the United §
States Capitol; §
§
ELIZABETH L. CHENEY, in her §
official capacity as a member of the §
United States House of §
Representatives; §
§
ADAM B. SCHIFF, in his official §
capacity as a member of the United §
States House of Representatives; §

JAMES B. RASKIN, in his official capacity as a member of the United States House of Representatives;

SUSAN E. LOFGREN, in her official capacity as a member of the United States House of Representatives;

ELAINE G. LURIA, in her official capacity as a member of the United States House of Representatives;

PETER R. AGUILAR, in his official capacity as a member of the United States House of Representatives;

STEPHANIE MURPHY, in her official capacity as a member of the United States House of Representatives;

ADAM D. KINZINGER, in his official capacity as a member of the United States  House of Representatives;

and

The "SELECT COMMITTEE TO INVESTIGATE  THE JANUARY 6th ATTACK ON  THE CAPITOL OF THE UNITED STATES," a body established by the United States House of Representatives,

           Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

COMES NOW Phillip James Waldron, Plaintiff, and alleges as follows:

## INTRODUCTION

1.      This is an action for declaratory judgment and injunctive relief from a subpoena (the "Subpoena") served upon Defendant AT&T, Inc. ("AT&T"), upon removal from the 471st District Court, Collin County, Texas.  The subpoena was issued by the "Select Committee to Investigate the January 6th Attack on the United States Capitol" (the "Committee"), and signed by its Chair, Bennie G. Thompson, and demands the production of "all subscriber information" in the custody of AT&T concerning cellular telephone account of Plaintiff Col. James Phillip Waldron, U.S. Army, Ret.,  for the period November 1, 2020, to January 31, 2021.

2.      The "subscriber information" sought by the subpoena includes Col. Waldron's personal contact, account billing, and authorized user information, in addition to connection records such as the times, duration, and recipients of all calls or text messages.

3.      In November, 2020, Plaintiff was retained as a consulting expert to attorney and Intervenor Wm. Charles Bundren, THE BUNDREN LAW GROUP PLLC ("Bundren"), to perform services necessary to the performance of professional legal services by Bundren in the representation of clients and in anticipation of litigation. That contractual relationship lasted continuously through January 31, 2021.

4.     The disclosure of the Plaintiff's account information by AT&T will reveal records of communications relating to Waldron's contractual engagement with Bundren and is prohibited as in violation of the attorney-client privilege and work product doctrine.   Moreover, the subpoena was issued without any legal authority because the Committee and its members (the "Member Defendants") failed to comport with the requirements under its authorizing resolution, H. Res. 503, H. Res. 503, 117th Cong. (2021).   Further, the subpoena exceeds the scope of the Congress's power to investigate for a genuine legislative purpose, was issued in violation of the Stored Communications Act, 18 U.S.C. §§ 2702(a)(1), (3) and the Telecommunications Act of 1996, 47 U.S.C. § 222, and violates Col. Waldron's rights under the First and Fourth Amendments of the U.S. Constitution and Article I, §§ 8 and 9 of the Texas Constitution.

5.     Plaintiff seeks a judgment declaring that the subpoena was invalidly issued under its own congressional enabling authorization, violates federal statutes, violates his rights under the First and Fourth Amendments of the U.S. Constitution and Article I, §§ 8 and 9 of the Texas Constitution, and would invade the attorney-client privilege and the sanctity of Bundren's and other attorneys' work product. Plaintiff further seeks injunctive relief to prohibit AT&T from complying with such illegal subpoena and disclosing such privileged information.

## PARTIES

6.      Plaintiff James Phillip Waldron is an adult resident of the State of Texas. Plaintiff is a citizen of the State of Texas and the United States.

7.      Wm. Charles Bundren is an attorney who is, and at all times pertinent to this action was, licensed to practice law in the State of Texas, practicing as the sole member of THE BUNDREN LAW GROUP PLLC, a duly organized professional limited liability company registered in the State of Texas.

8.      Defendant AT&T, Inc., is a Delaware corporation with its principal place of business in Dallas, Texas.  CT Corporation System, doing business at 1999 Bryan St., Suite 900, Dallas, TX 75201-3136, is the agent for service of process on Defendant AT&T, which filed a notice of removal to this Court from the 471st District Court, Collin County, Texas, on April 15, 2022 (Doc. 1).

9.      Defendant Bennie G. Thompson is a member of the United States House of Representatives who was appointed by Speaker Pelosi to chair the Committee and in whose name the Subpoena was issued.

10.     Defendants Elizabeth L. Cheney, Adam B. Schiff, James B. Raskin, Susan E. Lofgren, Elaine G. Luria, Peter R. Aguilar, Stephanie Murphy, and Adam D. Kinzinger are members of the United States House of Representatives who were appointed by the Speaker of the House to serve on the Committee.

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States.  This Court has supplemental jurisdiction over Plaintiff's state law claims because they derive from a common nucleus of operative facts with the federal constitutional and statutory claims alleged herein, such that the state law claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," pursuant to 28 USC § 1367(a).

12.     Venue is properly before this Court under 28 USC § 1391(a)(2), because a substantial part of the events giving rise to this claim occurred in Collin County, Texas.

## STATEMENT OF FACTS

13.     Plaintiff is a consultant retained by a law firm and an attorney who maintain their principal place of business in Collin County, Texas, to assist in investigating matters for clients regarding the November 2020 Presidential election (the "Election"). Plaintiff has also been retained by attorneys and law firms residing and licensed elsewhere (collectively with the Collin County attorney and law firm, the "Attorneys") to assist in the investigation of matters related to the Election for clients of these Attorneys for the rendition of legal advice for their clients in connection with and in anticipation of litigation.

14.     Plaintiff entered into agreements with Attorneys to not disclose and to keep confidential all information regarding the investigation being conducted by said Attorneys for their clients concerning the November 2020 Presidential election, which Plaintiff assisted and investigated for said Attorneys (at least in the case of Intervenor Bundren, the "Confidential and Proprietary NDA"). The Attorneys selected Plaintiff to assist them, on behalf of their clients, in investigating the Election with the understanding that Plaintiff would not disclose any information regarding the attorneys, law firms, the clients of the law firm or attorneys, the communications among and between Plaintiff, clients, and the attorneys and law firms, and the work product created by the Plaintiff pursuant to these engagements.

15.     The Confidential and Proprietary NDA requires Plaintiff to keep confidential and to not disclose any information regarding any investigation of the Election and to take actions to protect the confidential and proprietary information investigated for the law firms and attorneys regarding the Election for and on behalf of the attorneys and law firm clients.

16.     Plaintiff understood the confidential, proprietary and privileged nature of the investigation in which Plaintiff was retained to assist for clients of the Attorneys, and Plaintiff agreed to keep all information regarding the investigation confidential, proprietary and privileged.  The Attorneys are bound by the attorney-

client privilege with their clients for whom Plaintiff agreed to consult on a confidential, proprietary and privileged manner.

17.    Allegedly, on January 6, 2021, a group of election justice protestors in Washington, D.C., entered the United States Capitol, allegedly breached security, and allegedly delayed the counting of the Electoral College votes until order was restored. The United States Department of Justice has reportedly arrested and charged more than 800 individuals in connection with the events of January 6th. Plaintiff had no involvement in the events of January 6th.  Nevertheless, a committee of the House of Representatives of the Congress of the United States of America is seeking records from Defendant AT&T that contain or would reveal confidential and proprietary information, and infringe upon the attorney-client privileges and attorney work product privileges held by numerous clients of Plaintiff and the attorneys and law firms described above.

18.    On June 28, 2021, U.S. House Speaker Nancy Pelosi introduced House Resolution 503 ("H. Res. 503"), "Establishing the Select Committee to Investigate the January 6th Attack on the United States Capitol."  Two days later, the House passed H. Res. 503.  H. RES. 503, 117th Cong. (2021).

19.    H. Res. 503 requires the Speaker of the House to "appoint 13 Members to the Select Committee, 5 of whom shall be appointed after consultation with the minority leader," and to designate one Member to serve as chair of the Select

Committee.   But the Speaker only appointed nine members to the Select Committee—seven Democrats and two Republicans.  Thus the Select Committee is not an authorized congressional committee because its very composition fails to comport with its own authorizing resolution. See H. Res. 503, Section 2. Despite this, Speaker Pelosi purported to appoint and designate Defendant Bennie Thompson to serve as Chairman of the Committee.

20.     H. Res 503 Section 3 establishes the Committee for three purposes:  **(1)** To investigate and report upon the facts, circumstances, and causes relating to the January 6, 2021, domestic terrorist attack upon the United States Capitol Complex (hereafter referred to as the "domestic terrorist attack on the Capitol") and relating to the interference with the peaceful transfer of power, including facts and causes relating to the preparedness and response of the United States Capitol Police and other Federal, State, and local law enforcement agencies in the National Capital Region and other instrumentalities of government, as well as the influencing factors that fomented such an attack on American representative democracy while engaged in a constitutional process;  **(2)** To examine and evaluate evidence developed by relevant Federal, State, and local governmental agencies regarding the facts and circumstances surrounding the domestic terrorist attack on the Capitol and targeted violence and domestic terrorism relevant to such terrorist attack; and **(3)** To build upon the investigations of other entities and avoid unnecessary duplication of efforts

by reviewing the investigations, findings, conclusions, and recommendations of other executive branch, congressional, or independent bipartisan or nonpartisan commission investigations into the domestic terrorist attack on the Capitol, including investigations into influencing factors related to such attack.

21.     H. Res. 503 Section 4 thus limits the Committee's authority to three "functions": (1) to "investigate the facts, circumstances, and causes relating to the domestic terror attack on the Capitol"; (2) to "identify, review, and evaluate the causes of and the lessons learned from the domestic terrorist attack on the Capitol"; and (3) to "issue a final report to the House containing such findings, conclusions, and recommendations for corrective measures described in subsection (c) as it may deem necessary."

22.     Subsection (c) of Section 4 describes three categories of "corrective measures": "changes in law, policy procedure, rules, or regulations that could be taken" (1) "to prevent future acts of violence, domestic terrorism, and domestic violent extremism, including acts targeted at American democratic institutions"; (2) "to improve the security posture of the United States Capitol Complex while preserving accessibility of the Capitol Complex for all Americans"; and (3) "to strengthen the security and resilience of the United States American democratic institutions against violence, domestic terrorism, and domestic violent extremism."

23.     H. Res. 503 Section 5(c)(4) authorizes the Chair of the Committee to "issue subpoenas pursuant to clause 2(m) of Rule XI [subpoena power] in the investigation and study conducted pursuant to sections 3 and 4 of this resolution," but Res. 503 Subsections (A) & (B) of Section 5(c)(6) limit that authority by requiring consultation with, and notice to, the ranking minority member of the Committee prior to issuing a subpoena.  The Chair did not consult with the ranking member prior to issuing the Subpoena on Defendant, because the Committee does not have a ranking member.  On November 2, 2021, the General Counsel of the House of Representatives admitted that "there were no majority or ranking members" of the Committee.

24.     On or about February 1, 2022, Chairman Thompson and the Member Defendants, on behalf of the Committee, and without the required consultation and notice to a ranking member, voted to and did issue a subpoena to Defendant seeking records concerning phone numbers purportedly listed in "Section B, below." (A redacted copy of the Subpoena is attached hereto as Exhibit 1 and incorporated and adopted herein by reference for all purposes).

25.     On February 9, 2022, Defendant AT&T wrote Plaintiff to advise that it "ha[d] received a subpoena requiring the production of certain records associated with the phone number referenced above" (identifying the number assigned to Plaintiff) and attaching "[a] copy of the subpoena," but excluding "Section B, which

identifies the phone number referenced above." Nowhere within the copy of the Subpoena provided to Plaintiff is Plaintiff's identity, or any other customer whose records are sought, disclosed.

26.     The Subpoena instructs Defendant to produce subscriber information and cell phone data associated with Plaintiff's personal cell phone. The subscriber information demanded by the Subpoena includes subscriber names and contact information, authorized users, time of service provided, account changes, associated IP addresses, and other metadata. The cell phone data requested could include all calls, text messages, and other records of communications associated with the phone number. These data can be used to facilitate historic cell site analysis and geofencing. The Subpoena seeks all such data from November 1, 2020, through January 31, 2021.

27.     As previously described herein, Plaintiff is a consultant working for an Attorney doing business in Collin County, Texas, and Attorneys elsewhere who were representing clients and conducting an investigation of the Election during the time period covered by the Subpoena. Plaintiff used the account associated with the phone number for which the information is sought to communicate with the Attorneys and about the Attorneys' clients, and those communications are protected by, *inter alia*, the attorney-client privilege, the work product doctrine and the Confidential and Proprietary NDA.  But the Subpoena would require the disclosure

of data which would reveal Plaintiff's communications with the Attorneys and other agents of the Attorneys, and would facilitate the Defendant Committee and the Defendant Members in ascertaining Plaintiff's movements among various locations in the discharge of Plaintiff's confidential work for the Attorneys.  This would, in turn, disclose Plaintiff's confidential and privileged sources and methods in the discharge of his engagements for said Attorneys.

## COUNT I
### Declaratory Relief
### 28 U.S.C. § 2201
### Subpoena Unlawful—No Valid Legislative Purpose

28.     Plaintiff repeats, realleges, and incorporates all previous paragraphs herein as if set forth herein.

29.     Congress' broad "power of inquiry—with process to enforce it—is an essential and appropriate auxiliary to the legislative function." *McGrain v. Daugherty*, 273 U.S. 135, 174 (1927).   Accordingly, Congress and its duly authorized committees may issue a subpoena where the information sought "is related to, and in furtherance of, a legitimate task of Congress," *Watkins v. United States*, 354 U.S. 178, 187 (1957), and the subpoena serves a "valid legislative purpose." *Quinn v. United States*, 349 U.S. 155, 161 (1955). At the same time, because Congress's subpoena power "is justified as an adjunct to the legislative process, it is subject to several limitations," *Trump v. Mazars USA, LLP*, 140 S. Ct.

2019, 2031 (2020), limitations which stem directly from the Constitution. *Kilbourn v. Thompson*, 103 U.S. 168, 182-89 (1880).

30.     Specifically, the Constitution permits Congress to enact only certain kinds of legislation, *see, e.g.*, U.S. CONST. art. I, § 8, and while Congress's power to investigate "is justified as an adjunct to the legislative process, it is subject to several limitations." *Mazars*, 140 S. Ct. at 2031. These limitations include that Congress may not issue a subpoena for the purposes of "law enforcement" because "those powers are assigned under Arts. II and III of the Constitution to the Executive and the Judiciary," *Quinn*, 349 U.S. at 161, or to "try" someone "of any crime or wrongdoing," *McGrain*, 273 U.S. at 179; nor does Congress have any "general power to inquire into private affairs and compel disclosure," *id*., at 173-74, or the "power to expose for the sake of exposure," *Watkins*, 354 U.S. at 200. Also, congressional investigations "conducted solely for the personal aggrandizement of the investigators or to 'punish' those investigated are indefensible." *Watkins*, 354 U.S. at 187, *Mazars*, 140 S. Ct. at 2032. Additionally, as the Supreme Court has recognized: "[t]he Bill of Rights is applicable to [congressional] investigations as to all forms of government action," and the Select Committee may not "abridge[]. . . the First Amendment freedoms of speech, press, religion, or political belief and association" in the name of advancing its investigation. *Watkins*, 354 U.S. at 188. *See also, United States v. Rumely*, 345 U.S. 41, 46-47 (1953).

31.    Thus, to ensure that a Congressional inquiry meets a "valid legislative purpose," an inquiring committee must define "with the same degree of explicitness and clarity that the Due Process Clause requires in the expression of any element of a criminal offense" its "jurisdictional pertinency" so as to avoid the "vice of vagueness." *Watkins*, 354 U.S. at 209. *See also, id*. at 206 ("When the definition of jurisdictional pertinency is as uncertain and wavering as in the case of the Un-American Activities Committee, it becomes extremely difficult for the Committee to limit its inquiries to statutory pertinency").

32.    The Defendant Committee and the Defendant Members have not, and cannot, demonstrate a "valid legislative purpose" justifying its need for a subpoena of private citizen data—the subscriber information as well as connection records, geolocation data, and records of session times and durations—especially for a citizen who was not involved with and did not in any way participate in the alleged "attack on the Capitol" on January 6. Consequently, the Committee cannot establish sufficient jurisdictional pertinence justifying the breadth of the Subpoena's demand for private citizen data pertaining to Plaintiff.

33.    The Committee has attempted unlawfully to expand its jurisdiction and the scope of its investigation far beyond the specific confines of H. Res. 503. In fact, House General Counsel Douglas Letter admitted this in a hearing, indicating that the Committee was instead going to investigate the investigators of election fraud,

apparently on the unsupported theory that legal work to uncover fraud and expressions of concern that the 2020 Election was affected by fraud—expressions fully protected by the First Amendment—somehow "brought about" the riotous activity of a subset of demonstrators on January 6:

> [W]e need to figure out what was the atmosphere that brought . . . about [the events of January 6, including] the many attempts that were made before the election to try to build the nature of mistrust about the election itself, which goes to undermine our democracy, so that if President Trump did lose he would be able to say that his is unfair and to generate lots of anger and rage that led to January 6.[1]

34.    The Committee itself has disavowed any intention to confine itself to the specific limitations of H. Res. 503.   In one press release the Committee admitted openly its view that "attempts to promote unsupported claims of election fraud" were among the "causes that contributed to the violence on January 6."    Defendant Chairman Thompson has gone so far as to label as criminal the mere recommendation of "a process by which elections could be manipulated in various states," apparently referring to any proposals to invalidate electors chosen from questioned voting results.   Defendant Thompson claimed that a witness simply advancing a "recommendation that led states to believe they could overturn" the 2020 election results would have thereby "contributed to the January 6 insurrection."

---

[1]   *See* Hrg T., *Trump v. Thompson*, No. 21-cv-002769 (Nov. 4, 2021).

35.     Further, through its Members, the Committee has embraced the role of an inquisitorial tribunal seeking evidence of criminal activity. By way of example, on December 23, 2021, Defendant Thompson told *The Washington Post* the Committee was investigating whether President Trump's actions on January 6, 2021, "warrant a [criminal] referral."[2]  Similarly, Defendant Luria told CNN: "[T]hat's exactly why we're conducting this investigation, to find out all the facts, . . . and . . . hold people accountable who are responsible."[3]   And Defendant Cheney told *Rolling Stone*: "We must know what happened here at the Capitol. We must also know what happened every minute of that day in the White House—every phone call, every conversation, every meeting leading up to, during, and after the attack."[4]

36.     The Department of Justice is conducting a parallel criminal investigation concerning the same nucleus of operative facts and pursuing the same theories of causality, however preposterous, as prosecution theories.  A federal Grand Jury has been empaneled and a team of prosecutors and FBI agents, led by Assistant U.S.

---

[2]   Tom Hamburger, Jacqueline Alemany, Josh Dawsey, and Matt Zapotosky, *Thompson Says Jan. 6 Committee Focused on Trump's Hours of Silence During Attack, Weighing Criminal Referrals*, *The Washington Post (Dec. 23, 2021,* available at https://www.washingtonpost.com/politics/january-6-thompson-trump/2021/12/23/36318a92-6384-11ec-a7e8-3a8455b71fad_story.html.

[3]   Zachary Cohen and Annie Grayer, January 6 Committee Says it Would Make Criminal Referrals if 'Appropriate,' but that Could be a Long Way Off, CNN (Dec. 21, 2021), available at https://www.cnn.com/2021/12/21/politics/january-6-committee-criminal-referrals/index.html.

[4]   Peter Wade, Cheney: Investigate Trump's 'Every Call, Every Conversation, Every Meeting' on Jan. 6 , *Rolling Stone* (July 27, 2021), available at https://www.rollingstone.com/politics/politics-news/cheney-investigate-trump-capitol-attack- communications-1203084/.

Attorney Molly Gaston, District of D.C., and assisted by Main Justice, is conducting a sweeping criminal investigation into those, among others, who have "worked in the cybersecurity space on election- and voting-related issues."  There is no legal impediment to the sharing of evidence—including all of the records and data sought by the Subpoena—between the Defendant Committee and Defendant Members and these federal prosecutors.

37.    The Defendant Committee has slipped completely free from the moorings of its original charter.  Thus lacking any "valid legislative purpose" to seek the subscriber information as well as connection records, corroboration of geo-location data and records of session times and durations sought by its Subpoena to Defendant AT&T, the Subpoena is unenforceable.  The unlawful composition of the Select Committee and its lack of a ranking member likewise render the Subpoena void and unenforceable.  This Court should therefore issue a Declaratory Judgment that the Subpoena is ultra vires, unlawful, and unenforceable.

## COUNT II
**Declaratory Relief**
**28 U.S.C. § 2201**
**Subpoena Unlawful—Violation of Stored Communications Act,**
**18 U.S.C. § 2702, and Telecommunications Act, 47 U.S.C. § 222**

38.    Plaintiff repeats, realleges, and incorporates all previous paragraphs herein as if set forth herein.

39.     Subject to specifically enumerated exceptions not applicable here, the federal Stored Communications Act provides that "a person or entity providing electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage to that service." 18 U.S.C. § 2702(a)(1).

40.     The Stored Communications Act further provides that an electronic service provider—such as Defendant AT&T—"shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications …) to any governmental entity." 18 U.S.C. § 2702(a)(3).

41.     The exceptions for disclosures found in 18 U.S.C. § 2702(c) do not apply to the Defendant Committee's subpoena at issue in this case.

42.     Similarly, the Telecommunications Act of 1996 protects the confidentiality of "customer proprietary network information," which includes, *inter alia*, phone logs and location information, "[e]xcept as provided by law or with approval of a customer." 47 U.S.C. § 222.

43.     The subscriber information as well as connection records, geolocation data, and records of session times and durations sought by the Subpoena served upon Defendant necessarily seek the "contents of a communication while in electronic storage," or, in the alternative, because neither Plaintiff nor any law authorize the

disclosure of these records, the Subpoena is unenforceable and this Court should issue a Declaratory Judgment holding that the Subpoena is ultra vires, unlawful, and unenforceable under the Stored Communications Act and the Telecommunications Act of 1996.

## COUNT III
### Declaratory Relief
### 28 U.S.C. § 2201
### Compliance with Subpoena Unlawful—Violation of Attorney-Client Privilege, FED. R. EVID. 501 and TEX. R. EVID. 503, and Work Product Doctrine

44.     Plaintiff repeats, realleges, and incorporates all previous paragraphs herein as if set forth herein.

45.     As a consultant to the attorneys licensed in the State of Texas and doing business in Collin County, Texas, and elsewhere, Plaintiff has an ethical duty and right to protect communications rendered in Plaintiff's role as a confidential consultant to the Attorneys and which may reveal attorney-client privileged information, work product, proprietary information, confidential information or information that may contain or reveal any other applicable privilege.

46.     Plaintiff has a contractual obligation to protect and to not disclose, or permit others to disclose, confidential and proprietary information during the time that Plaintiff was conducting an investigation of the Election for the Attorneys.

47.     Plaintiff uses and has used the phone number that is subject to the Subpoena to communicate with the Attorneys' clients, other consultants retained by

Attorneys, and with witnesses and others in connection with Plaintiff's consulting having nothing to do with the Select Committee's investigation as defined by H. Res. 503.

48.     The Subpoena would force Defendant to reveal Plaintiff's attorney-client and work product protected information which would breach Plaintiff's Confidential and Proprietary NDA with the Attorneys without providing all of the Attorneys or their clients with the opportunity to object.

49.     Compliance with the Subpoena while precluding Plaintiff from any opportunity to review the proposed disclosure and assert applicable privileges, violates FED. R. EVID. 501 and TEX. R. EVID. 503.

50.     The Court should issue a declaratory judgment establishing that compliance with the Subpoena would violate FED. R. EVID. 501, TEX. R. EVID. 503, and the work product doctrine.

<u>**COUNT IV**</u>
**Declaratory Relief**
**28 U.S.C. § 2201**
**Subpoena Unlawful—Violation of First Amendment**

51.     Plaintiff repeats, realleges, and incorporates all previous paragraphs herein as if set forth herein.

52.     The Supreme Court has long recognized the First Amendment right of the people to associate freely for expressive purposes, and that the compelled

disclosure of affiliation with advocacy groups may chill or refrain that associative conduct. *See, e.g., NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 462 (1958).

53.     The government's effort to compel disclosure of associative conduct must be reviewed with exacting scrutiny, meaning the government must show that its action is narrowly tailored to meet a sufficiently important government interest to justify compelling the disclosure. *Americans for Prosperity Found. V. Bonta,* 141 S. Ct. 2373 (2021).

54.     The Subpoena is neither narrowly tailored nor does it advance a sufficiently important governmental interest to permit compliance by Defendant.

55.     Simply put, no governmental interest could be sufficiently important to permit it to delve through the data connected with every phone call, text message or email communication placed or received by Plaintiff over a three-month period, or to mine the data to geo-track Plaintiff's movements throughout that period.

56.     The Subpoena is an invalid attempt to infringe Plaintiff's First Amendment rights and the First Amendment rights of the Attorneys and their clients, and the rights guaranteed by TEX. CONST. art I, § 8, and should not be enforced.

57.     This Court should issue a judgment declaring that compliance with the Subpoena would violate Plaintiff's rights to free expression and association under U.S. CONST. AMEND. I and TEX. CONST. art I, § 8.

## COUNT V
### Declaratory Relief
### 28 U.S.C. § 2201
### Subpoena Unlawful—Violation of Fourth Amendment
### and TEX. CONST. art. 1 § 9

58.     Plaintiff repeats, realleges, and incorporates all previous paragraphs herein as if set forth herein.

59.     The Fourth Amendment guarantees the right of the people to be free from unreasonable searches and seizures, as well as guaranteeing a person's reasonable expectation of privacy from governmental intrusion. *See, e.g., Katz v. United States,* 389 U.S. 347 (1967).  The same rights are guaranteed by TEX. CONST. art I, § 9.

60.     Congress has no general or inherent authority to issue subpoenas to pry into private affairs or to seek information untethered to any valid legislative purpose. *McGrain*, 273 U.S. at 173-74.

61.     The Supreme Court has held that a person has a constitutionally-recognized reasonable expectation of privacy to the details contained in a carrier's records of his cell phone account that could reveal his travels and locations. *Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018).  The government "must generally obtain a warrant supported by probable cause before acquiring such records."  *Id.*  Even a seizure of such records under an order issued pursuant to the Stored Communications Act, 18 U.S.C. § 2703, based upon a showing that the

records "are relevant and material to an ongoing criminal investigation," is a violation of the Fourth Amendment.  *Id*.

62.     The Subpoena is an unlawful invasion of Plaintiff's right to be free from unreasonable searches and seizures and Plaintiff's right to privacy and the right of privacy of the Attorneys and their clients, in the absence of a search warrant issued upon probable cause. The subpoena is invalid and thus unenforceable.

63.     This Court should therefore issue a judgment declaring that compliance with the Subpoena would violate Plaintiff's rights under U.S. CONST. AMEND. IV and TEX. CONST. art I, § 9.

## COUNT VI
### Injunctive Relief
### 28 U.S.C. § 2202, FED. R. CIV. PRO. 65

64.     Plaintiff repeats, realleges, and incorporates all previous paragraphs herein as if set forth herein.

65.     Because the Committee's Subpoena to Defendant AT&T is ultra vires, unlawful, and unenforceable, for the reasons set forth herein, Plaintiff is likely to succeed on  the merits of this action.

66.     No plain, adequate or complete remedy at law is available to Plaintiff to redress the wrongs alleged herein should Defendant AT&T disclose the records described in the Subpoena to the Committee.

67.     Should this Court not prevent the disclosure of Plaintiff's subscriber information as well as connection records and records of session times and durations, and all of Plaintiff's courses of travel and meeting locations from November 1, 2020, to January 31, 2021, the Plaintiff, the Attorneys and their clients are likely to suffer irreparable harm.

68.     The balance of the equities weighs in Plaintiff's favor and the public interest favors against disclosure so as to prevent the unwarranted intrusion into the affairs of citizens and the violations of constitutional rights and statutory requirements, and absent the requisite legal authorization and "valid legislative purpose" of any Congressional subpoena.

69.     Accordingly, this Court should issue an Order enjoining the Defendant Committee from attempting to coerce compliance with the Subpoena and Defendant AT&T from complying with the Subpoena and from producing Plaintiff's records pursuant to the Subpoena to the Committee.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff James Phillip Waldron prays for relief as follows:

1.      For a declaration, pursuant to 28 U.S.C. § 2201, that

      a.  the Subpoena was issued without legal authority;

b.  The Committee's issuance of the Subpoena violates Plaintiff's rights under the First, Fourth and Fourteenth Amendments of the U.S. Constitution and Article I §§ 8 and 9 of the Texas Constitution;

c.   Defendant AT&T's production of records pursuant to the Subpoena would violate Plaintiff's rights under the First, Fourth and Fourteenth Amendments of the U.S. Constitution and Article I §§ 8 and 9 of the Texas Constitution;

d.  The Subpoena was issued by the Committee in violation of the Stored Communications Act, 18 U.S.C. § 2702 (a)(3) and the Telecommunications Act of 1996, 47 U.S.C. § 222;

e.  Defendant AT&T's production of records pursuant to the Subpoena would violate the Stored Communications Act, 18 U.S.C. § 2702 (a)(3) and the Telecommunications Act of 1996, 47 U.S.C. § 222, and

f.  Defendant AT&T's production of records pursuant to the Subpoena would violate the attorney-client privilege of the Attorney's clients and the work product of the Attorneys;

2.   For an order enjoining the Defendant Committee or any of the Defendant Members from further attempting to enforce or coerce compliance with

its unlawful Subpoena, and enjoining Defendant AT&T from producing or otherwise disclosing the records described in the Subpoena; and

3.      For such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ S. Michael McColloch*
S. Michael McColloch
S. MICHAEL MCCOLLOCH PLLC
6060 N. Central Expy, Suite 500
Dallas, Texas 75206
214-643-6055
smm@mccolloch-law.com

Karen L. Cook
KAREN COOK LAW PLLC
6060 N. Central Expy, Suite 500
Dallas, Texas 75206
214-643-6054
karen@karencooklaw.com

Attorneys for Plaintiff Waldron

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 20, 2022, the foregoing document was filed with the Clerk for the United States District Court for the Eastern District of Texas using the CM/ECF electronic filing system, and that service of such filing will be made electronically on all counsel of record.


By:     */s/ Karen Cook*

Karen Cook, Esq.

# EXHIBIT 1



**Global Legal Demand Center**

11760 US Highway 1, STE 300
North Palm Beach, FL 33408

February 9, 2022

**BY OVERNIGHT AND ELECTRONIC MAIL**
JAMES P WALDRON

Re:     Notice of Subpoena for Records

Account Number: █████████
File Number: 3323168.010

Dear Valued AT&T Customer:

The AT&T Global Legal Demand Center responds to subpoenas addressed to AT&T companies ("AT&T"). We have received the enclosed congressional subpoena directing AT&T to disclose information about you, your account, or one or more phone numbers associated with you. Your phone number █████████ is listed on a confidential attachment to the subpoena. As a courtesy, we are sending this notice to your address on file to enable you to contest the subpoena if you wish to do so.

You may contest the subpoena in accordance with applicable law. You may also request that the congressional committee responsible for issuing the subpoena withdraw or modify the subpoena voluntarily, by contacting the committee at Select_Clerks@mail.house.gov. AT&T does not give legal advice to its customers or make filings on their behalf. If you need assistance or have further questions, we recommend that you consult an attorney of your choice. If you are not represented by an attorney and do not wish to retain counsel at this time, you may discuss the subpoena directly with the congressional committee responsible for issuing the subpoena.

AT&T plans to respond to this subpoena on February 23, 2022. If we receive a copy of your filing contesting the subpoena by February 22, 2022, AT&T will respond to the subpoena in accordance with the subsequent ruling of the court. Required documentation should be faxed to the AT&T Global Legal Demand Center (fax number 888-938-4715) with the above-referenced AT&T File No. on the transmittal.

We hope you will find this courtesy notice helpful.

Thank you for choosing AT&T.

Sincerely,

Global Legal Demand Center

# SUBPOENA

## BY AUTHORITY OF THE HOUSE OF REPRESENTATIVES OF THE CONGRESS OF THE UNITED STATES OF AMERICA

*To* AT&T

You are hereby commanded to be and appear before the

Select Committee to Investigate the January 6th Attack on the United States Capitol

of the House of Representatives of the United States at the place, date, and time specified below.

☑ **to produce the things identified on the attached schedule** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of production: 1540A Longworth House Office Building, Washington, DC 20515

Date: February 15, 2022                    Time: 10:00 a.m.

☐ **to testify at a deposition** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of testimony: _____

Date: _____                    Time: _____

☐ **to testify at a hearing** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of testimony: _____

Date: _____                    Time _____

*To* any authorized staff member or the United States Marshals Service _____

_____ to serve and make return.

Witness my hand and the seal of the House of Representatives of the United States, at

the city of Washington, D.C. this 1st day of February , 20 22 .

_____
*Chairman or Authorized Member*

Attest: _____

*Clerk*

AT&T
Page 3

## SCHEDULE

In accordance with the attached definitions and instructions, you, AT&T, are hereby required to produce the documents and records ("Records") listed in Section A, below, **for the time period November 1, 2020, to January 31, 2021**, concerning the phone numbers listed in Section B, below (the "Phone Numbers"). This schedule does not call for the production of the content of any communications or location information.

**Please email the records to SELECT_CLERKS@MAIL.HOUSE.GOV** or, in the alternative, send them by mail to 1540A Longworth House Office Building, Washington, DC 20515, care of Jacob Nelson, Select Committee to Investigate the January 6th Attack on the U.S. Capitol.

### Section A – Records to Be Produced for Each Phone Number

1.    Subscriber Information: All subscriber information for the Phone Number, including:

        a.    Name, subscriber name, physical address, billing address, e-mail address, and any other address and contact information;

        b.    All authorized users on the associated account;

        c.    All phone numbers associated with the account;

        d.    Length of service (including start date) and types of service utilized;

        e.    Telephone or instrument numbers (including MAC addresses), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN") Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI") associated with the accounts;

        f.    Activation date and termination date of each device associated with the account;

        g.    Any and all number and/or account number changes prior to and after the account was activated;

        h.    Other subscriber numbers or identities (including temporarily assigned network addresses and registration Internet Protocol ("IP") addresses); and

2.    Connection Records and Records of Session Times and Durations: All call, message (SMS & MMS), Internet Protocol ("IP"), and data-connection detail records associated with the Phone Numbers, including all phone numbers, IP addresses, or devices that communicated with the Phone Number via delivered and undelivered inbound, outbound, and routed calls, messages, voicemail, and data connections.

**DOCUMENT PRODUCTION DEFINITIONS AND INSTRUCTIONS**

1.  In complying with this request, produce all responsive documents, regardless of classification level, that are in your possession, custody, or control, whether held by you or your past or present agents, employees, and representatives acting on your behalf. Produce all documents that you have a legal right to obtain, that you have a right to copy, or to which you have access, as well as documents that you have placed in the temporary possession, custody, or control of any third party.

2.  Requested documents, and all documents reasonably related to the requested documents, should not be destroyed, altered, removed, transferred, or otherwise made inaccessible to the Select Committee to Investigate the January 6th Attack on the United States Capitol ("Committee").

3.  In the event that any entity, organization, or individual denoted in this request is or has been known by any name other than that herein denoted, the request shall be read also to include that alternative identification.

4.  The Committee's preference is to receive documents in a protected electronic form (i.e., password protected CD, memory stick, thumb drive, or secure file transfer) in lieu of paper productions.  With specific reference to classified material, you will coordinate with the Committee's Security Officer to arrange for the appropriate transfer of such information to the Committee.  This includes, but is not necessarily limited to: a) identifying the classification level of the responsive document(s); and b) coordinating for the appropriate transfer of any classified responsive document(s).

5.  Electronic document productions should be prepared according to the following standards:

    a.  If the production is completed through a series of multiple partial productions, field names and file order in all load files should match.

    b.  All electronic documents produced to the Committee should include the following fields of metadata specific to each document, and no modifications should be made to the original metadata:

        BEGDOC, ENDDOC, TEXT, BEGATTACH, ENDATTACH,
        PAGECOUNT, CUSTODIAN, RECORDTYPE, DATE, TIME,
        SENTDATE, SENTTIME, BEGINDATE, BEGINTIME, ENDDATE,
        ENDTIME, AUTHOR, FROM, CC, TO, BCC, SUBJECT, TITLE,
        FILENAME, FILEEXT, FILESIZE, DATECREATED, TIMECREATED,
        DATELASTMOD, TIMELASTMOD, INTMSGID, INTMSGHEADER,
        NATIVELINK, INTFILPATH, EXCEPTION, BEGATTACH.

6.    Documents produced to the Committee should include an index describing the contents of the production. To the extent more than one CD, hard drive, memory stick, thumb drive, zip file, box, or folder is produced, each should contain an index describing its contents.

7.    Documents produced in response to this request shall be produced together with copies of file labels, dividers, or identifying markers with which they were associated when the request was served.

8.    When you produce documents, you should identify the paragraph(s) or request(s) in the Committee's letter to which the documents respond.

9.    The fact that any other person or entity also possesses non-identical or identical copies of the same documents shall not be a basis to withhold any information.

10.   The pendency of or potential for litigation shall not be a basis to withhold any information.

11.   In accordance with 5 U.S.C.§ 552(d), the Freedom of Information Act (FOIA) and any statutory exemptions to FOIA shall not be a basis for withholding any information.

12.   Pursuant to 5 U.S.C. § 552a(b)(9), the Privacy Act shall not be a basis for withholding information.

13.   If compliance with the request cannot be made in full by the specified return date, compliance shall be made to the extent possible by that date. An explanation of why full compliance is not possible shall be provided along with any partial production, as well as a date certain as to when full production will be satisfied.

14.   In the event that a document is withheld on any basis, provide a log containing the following information concerning any such document: (a) the reason it is being withheld, including, if applicable, the privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author, addressee, and any other recipient(s); (e) the relationship of the author and addressee to each other; and (f) the basis for the withholding.

15.   If any document responsive to this request was, but no longer is, in your possession, custody, or control, identify the document (by date, author, subject, and recipients), and explain the circumstances under which the document ceased to be in your possession, custody, or control.  Additionally, identify where the responsive document can now be found including name, location, and contact information of the entity or entities now in possession of the responsive document(s).

16.   If a date or other descriptive detail set forth in this request referring to a document

is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the request, produce all documents that would be responsive as if the date or other descriptive detail were correct.

17.   This request is continuing in nature and applies to any newly-discovered information. Any record, document, compilation of data, or information not produced because it has not been located or discovered by the return date shall be produced immediately upon subsequent location or discovery.

18.   All documents shall be Bates-stamped sequentially and produced sequentially.

19.   Upon completion of the production, submit a written certification, signed by you or your counsel, stating that: (1) a diligent search has been completed of all documents in your possession, custody, or control that reasonably could contain responsive documents; and
(2) all documents located during the search that are responsive have been produced to the Committee.

## **Definitions**

1.   The term "document" means any written, recorded, or graphic matter of any nature whatsoever, regardless of classification level, how recorded, or how stored/displayed (e.g. on a social media platform) and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, data, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, communications, electronic mail (email), contracts, cables, notations of any type of conversation, telephone call, meeting or other inter-office or intra-office communication, bulletins, printed matter, computer printouts, computer or mobile device screenshots/screen captures, teletypes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape, or otherwise. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

2.  The term "communication" means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether in a meeting, by telephone, facsimile, mail, releases, electronic message including email (desktop or mobile device), text message, instant message, MMS or SMS message, message application, through a social media or online platform, or otherwise.

3.  The terms "and" and "or" shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this request any information that might otherwise be construed to be outside its scope. The singular includes plural number, and vice versa. The masculine includes the feminine and neutral genders.

4.  The term "including" shall be construed broadly to mean "including, but not limited to."

5.  The term "Company" means the named legal entity as well as any units, firms, partnerships, associations, corporations, limited liability companies, trusts, subsidiaries, affiliates, divisions, departments, branches, joint ventures, proprietorships, syndicates, or other legal, business or government entities over which the named legal entity exercises control or in which the named entity has any ownership whatsoever.

6.  The term "identify," when used in a question about individuals, means to provide the following information: (a) the individual's complete name and title; (b) the individual's business or personal address and phone number; and (c) any and all known aliases.

7.  The term "related to" or "referring or relating to," with respect to any given subject, means anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is pertinent to that subject in any manner whatsoever.

8.  The term "employee" means any past or present agent, borrowed employee, casual employee, consultant, contractor, de facto employee, detailee, assignee, fellow, independent contractor, intern, joint adventurer, loaned employee, officer, part-time employee, permanent employee, provisional employee, special government employee, subcontractor, or any other type of service provider.

9.  The term "individual" means all natural persons and all persons or entities acting on their behalf.